v. Jones. Okay, Mr. Chauncey. Good afternoon. May it please the Court. My name is Adam Charnas, and I represent the plaintiffs, Rick Jackson, and his campaign committee. The Leadership Committee statute is virtually unprecedented, and as this Court knows, it allows the sitting Governor and Lieutenant Governor, and only them, to have a leadership committee that can accept unlimited donations, that can coordinate fully with their campaign committees, and can devote 100% of their activities, their fundraising, and their expenditures to support the chair of the committee. I think we understand all that, but, Mr. Charnas, what's unusual about your case, I think maybe the biggest sticking point here is whether we have state action. You have sued the Leadership Committee, which arguably is not a state actor, and it's curious to me. I assume the reason is because your client is able to self-fund his campaign. Does your client have a hybrid PAC, like Raffensperger? No. We have a campaign committee. You have a campaign committee, and that your client can spend a lot of money in support of, and isn't particularly interested in being free of contribution or coordination limits with your campaign committee. You just want to disable your opponent from having the Leadership Committee that takes unlimited contributions and coordination, right? That is correct. When you have inequality, there's two remedies, right? You can bring the higher limit down, or you can bring the lower limit up. We think it makes sense just to... Let me ask you this. When the Leadership Committee... Can I ask you a clarification first on your question? Sure. Sure. Thank you. You did sue state officials. You just didn't seek injunctive relief against them. That is... At least that's what the district court thought. Correct. We sued the same... Right. So you sued the Leadership Committee, but you also sued a number of state officials, presumably under Ex parte Young, but as the district court understood your complaint and your theory, the district court didn't think you were seeking injunctive relief against the state defendants, right? That is correct. Now, they're in the case. You just didn't get injunctive relief against them. Is that right? That is correct. Do you want injunctive relief against the state officials at this stage? At this stage, we are not... Have you asked for preliminary relief against them? We did not appeal and argue in our briefs, as you know, that the district court's failure to enjoin the state official's error. So we're not asking for that at this point.  Okay. Was the declaratory judgment in some requests, in some sense, against the state officials? It was. And our amended complaint, which we filed after the preliminary injunction, really sharpens and clarifies what our claims are against the state officials. We actually filed a complaint. Yeah, but we're here on the preliminary injunction, right? Right. That's right. That's what we have jurisdiction over, right? Understood. So let me ask you this. So when the leadership committee spins in support of the Jones candidacy, is that a government speech? Well, Your Honor, I think you're right that the state action is sort of the hardest issue in the case.  Is that a government speech? I think it's... Vote for Burt Jones for governor. That's not government speech, is it? No, I don't think it's... Wouldn't it be odd for us to say that the committee that's engaged in that is a state, in private speech, is a state actor? I think the answer is no. There are many circumstances in which that happens. I think the case... Okay. Could you give me some? Well, Brentwood, I think, is the closest case. That's a case where, in Tennessee, there was a private organization that governed high school athletics. Right. It was governed exclusively by officials of the schools, 86%, I think, that were public schools. And that was the key reason. One of... There were several others, but that was the key reason that the Supreme Court held that the association, albeit private, was a state actor, because it was staffed by public... Right. And if they engaged in some kind of religious speech, that could be an establishment clause problem, because that would be really government speech. That supports my view. So if this is private speech, though, it would be odd to say they're a state actor. Can you give me an example where that's the case? I can't off the top of my head, no. I think it's... Okay. But I think the thing about state action, and this Court has said this, the Supreme Court has said this, is that there's really no general rule. There's not a rule you can apply to determine whether something's state action. It's all very fact-specific. And here, as the Court knows, under this statute, this leadership committee must be chaired by the Lieutenant Governor. As soon as he leaves office, it has to either disband or transfer its assets to somewhere else. It's... In the words of Brentwood... Nothing it's doing is in support of the government. It's all in support of a private election campaign engaged in private speech. I mean, look, let's say the legislature passes a law that says the Governor and the Lieutenant Governor can use state funds to buy a car. And they can use the car for government work. And it's okay if they use it for some personal business, too, just as long as it's, you know, not more than 25%. And after years of using the car for government business, the Lieutenant Governor wants to go on a vacation in Destin, and he lets his teenage daughter drive it, and there's an automobile accident. We wouldn't think, oh, state action, would we? No, I don't think we do, but I think the Governor, what the government has done here is, oh, you can create this committee, you can use it to support your office, oh, but you can do these other things, too, that no one would think is the government's business, right? Well, I don't, I disagree with you, in part because this committee, these leadership committees, are also authorized to fund the activities of the office. Yeah, but they don't have anything to do with this case. But there's an equivalent of a Monell requirement in the state action context, right? It's not like in all these cases, and look, I think it's very close, but it's not like in all these cases you have to show that the official policy of the state qua a state was in support of whatever action is being challenged, right? No, no, not at all. In fact, some of the state action cases, you could argue the state really didn't necessarily intend to imbue the official with, for example, the misbehaviors that can be, in certain circumstances, state action, and something that the state would disavow. One of the key points I wanted to mention is that if you find WBJ is not a state actor, and this harkens back to a little bit of the discussion in the last argument, it's not clear how this constitutional issue gets resolved. It gets resolved by you suing the officials who enforce the contribution and coordination limits that apply to your candidate's campaign committee. Well, I think there are two problems with that. That's easy. That's like classic ex parte young, negative injunction, and it remedies, fully remedies your problem, right? You don't really care about that because it just happens that your candidate doesn't really need contributions or coordination. I can't, my client is soliciting contributions, but I think, I don't think that, I don't think that remedies the problem. When we filed a complaint, and it's in the district court record, we filed a complaint with the ethics commission, and what they said is, this statute is constitutional. It doesn't matter that the federal district court twice held it was likely unconstitutional. We are still going to enforce it. So then we're in a situation where it's sort of unclear. Well, you agree, though, that in and of itself, there's nothing unconstitutional about the statute. What makes it unconstitutional is the disparity that it creates in interaction with other laws, right? Absolutely. And part of the problem here with, to harken back to the remedy discussion you had, because I disagree with Sag's lawyer here, is if you have a general rule, which is $8,400 for the primary, right? And then you have two exceptions, two narrow exceptions that benefit the incumbent governor and lieutenant governor. The general principle, when you find unconstitutionality, is to affirm the general rule and strike the exceptions. And that's what the Supreme Court clearly said in the Barr case, Barr v. American Association of Political Consultants, 591 U.S. 610. That gets us back to whether, though, you sued a state actor. Well, that's, I mean, I agree. Your theory, in essence, I think, for state action depends on the fact that were it not for specific state executive leadership positions held by the two individuals who can man these committees, these leadership committees, those committees wouldn't otherwise exist for challenges in a primary. Correct. And that constitutes the... And there are cases, not on point, but there are cases which suggest that when something happens only because of an individual's status as a state government official, you may be able to call it state action. That's right, Your Honor. We quoted those cases in our brief. Davison, for example, in the Fourth Circuit said there's likely state action, quote, when a defendant's status as a public official enabled her to execute a challenged action in a manner that private citizens never could. So, you, there, we've said, right, there are three ways to do it in that context, right? Correct. One is public function, the second is state compulsion, and the third is nexus joint action. Correct. And you're only traveling under the third, right? Correct. And we've said that the test for that, the relevant inquiry, is whether the state has so far insinuated itself into a position of interdependence with the private parties that it was a joint participant in the enterprise, right? Yes, but I think the Court has also... It sounds tough to hear. It is a tough standard, but the Court has also cautioned that there's no talismanic rule that applies and that every case needs to be looked at its individual circumstances. And we think in this case, the entwinement standard in Brentwood and from these other cases, from other circuits that we've, that we've cited in our brief, applies here. This is a very... So, if the money can be spent for the Lieutenant Governor's office, but that doesn't cause your client any injury, and we say, that doesn't so far insinuate yourself, we're just left with the fact that it's created for the benefit of the Lieutenant Governor, the Lieutenant Governor? Correct. Right. The only reason these leadership committees exist, or this one exists, WBJ, is because he is the Lieutenant Governor. The day after he ceases to be Lieutenant Governor, the committee cannot exist in that form. He cannot be chair of it, and he only had the right to form the committee the day he became Lieutenant Governor. I have a hypo that I'll ask your friends on the other side, too, because I think the problem here is that it's very unusual to have a statute that explicitly allows at least likely unconstitutional action, right? So, what if the state legislature of Georgia decided that it would be appropriate to write a statute permitting the Lieutenant Governor and the Governor to take by adverse possession for their personal use a house that they really liked, and they could use it while they were in that office? Who would the homeowner sue in that case? Like would, in that case, would the office holder, I mean, they're using it for their personal basis. It's not that they're going to have, you know, government functions there. It's just that because of their office, they're allowed under state law to do this thing. I think you would sue the Governor and the Lieutenant Governor. You wouldn't sue the state. They're in possession of the property. They're the ones who are taking the actions that injured you in the same way that WBJ here is the one who is acting to impose the injury on the plaintiffs. There's not much doubt that that would be all, that taking would be, as a result of the state law, it would be, I mean, there's not a state act or question there, right? I think that would be an easier case, yes. Yeah. There is a question of who you sue. Yeah, I would certainly want to think about it more, but I think you would sue the possessor of the property in that, in Judge Grant's hypothetical. You might want to sue the state also, but I think if you just sued the state, I think you would get an argument that... But of course... Right, there was a Lieutenant Governor liked this house. The state has nothing to do with it, right? If you sued the state officials who enforce contribution coordination limits that don't bind the leadership committee, you could get your injury fully redressed, wouldn't you? I'm not sure that's right because we don't have a quarrel with those limits. We are perfectly... Well, let's say, okay, maybe you say, I support limits, but if you were freed of them, there would be no more disparity, would there? Well, but I think that's true, but again... But it would redress your injury. It would, but the normal way that you remedy an equal inequality... It wouldn't be any state action question. You'd be suing the enforcement officials. Well, that's true, but I think the constitutional violation, I think what Barr says is that you don't do that, that we have two narrow exceptions, or incumbent protection exceptions, and you've got all these other general applications of the $8,400 limit that... The problem with it is there's no one really to enforce the exception. I mean, it's already happened. Well, that is the problem, is that there's no way... The reason that it's important to find state action... The genie's out of the bottle, and you want to sue the beneficiary of it, who's really a private actor engaged in private speech. Well, except he's the lieutenant governor, and the only reason he can engage in that speech is because...  Lieutenant governor running for governor, thank you. The only reason he can engage in that speech is because he is the lieutenant governor. And if we sue the attorney general and the ethics commission in their official capacities and said asking for what would be a mandatory injunction to enforce the $8,400 limit against the leadership committee, because the leadership committees are unconstitutional, I think that would present a whole bunch of prudential and other constitutional issues. I can see a court saying, no, I'm not going to do that. I think you may well be right about that, but that's very different from suing the officials to prevent the enforcement of the contribution and coordination limits against your candidate. But right, but those are, as I think Judge Graham pointed out earlier, there's no question that those limits are constitutional. Yeah, of course they're constitutional, but as I pointed out, there's no question that no limits would be constitutional, and then we wouldn't be here. That's true. That doesn't answer anything, just to say those are constitutional. So what? So would the opposite regime. No, but my point is that it would, that doesn't seem to be logical. What makes, the only problem here, the leadership committee statute itself is not unconstitutional. It's the interaction of the two. Right, absolutely. But it's the leadership committee statute that is, I think that is most, that is constitutionally objectionable because it benefits and protects the two named by office, named incumbent office holders. It's at war with, you know, fundamental democratic values, and therefore that's where I think the injunction should be focused. What about, I realize that this would not help you now potentially, but what about what I floated in the earlier case, which was enjoining the enforcement of the LC statute? I think that, I mean, I think that, I'm not sure, the problem is I'm not sure how you actually do that. Right. You know, that's why we filed the Ethics Commission complaint. I think if we went into court and said, don't enforce the statute, I think we would have to ask for a mandatory injunction that the Ethics Commissioners take action or the Attorney General take action to enforce. But what if the state, my understanding was that the state, when one of these is started, is under the obligation to approve it in some way. So an injunction barring enforcement of the statute would tell the state for new LC's at least that it could not approve those. I understand. Sorry. I'm not sure who is standing to seek that right now because you're saying, okay, the next... No, I'm not. I'm saying, this is taking it beyond your client, which I know is sometimes hard, but I'm talking about as a general matter, would that be one way to enforce a constitutional remedy? I think theoretically, but not practically. So let's say this, after this election, there's going to be a new Lieutenant Governor. The minute he or she takes the oath of office, he or she can establish a leadership committee. There's nobody who's going to have a standing to challenge that because the next election is four years off. What if someone asserts their intent to run for Lieutenant Governor? Four years hence? Of course, that depends on whether the Lieutenant Governor is going to run for re-election. Right. It's pretty speculative at that point when there's no candidate qualifying. Or actually, forget that because if the commission is enjoined from enforcing that statute, then when the Lieutenant Governor applied, then the commission would not be able to approve it, at least as to... Who's the plaintiff? There is no plaintiff. It's not a... Well, then there's no injunction. No, I'm talking... We can talk about it afterwards. I'm just trying to understand the question. The commission has the responsibility to approve or disapprove if it's not allowed, right? Leadership committees that are sought, new leadership committees, right? That's what the state of Georgia said anyway. So, if there was an injunction against the state officials who you all did sue, although you didn't ask for this, but if there was an injunction against state officials instructing them not to enforce that particular statute, right, then wouldn't the commission be obligated as a matter of law when a new leadership committee applied to not approve it in any of the respects that would be problematic? If there were an injunction, I agree with you, but I guess I'm dubious that there could be a plaintiff that would have standing to seek that before a new Lieutenant Governor. And it wouldn't be a universal injunction, right? Because the Supreme Court's told us we don't do those, right? Well, if there was an injunction, let's say I became Lieutenant Governor and someone got an injunction saying I couldn't establish a new leadership committee.  Presumably... It wouldn't stop the governor, though. No, but I assume the ethics commissioners... Nor would it benefit... I mean, assuming we could think of who this plaintiff would be, it wouldn't necessarily benefit any other plaintiff. He's not a party to the injunction. The commission could say that injunction only bounds so-and-so. That's sort of what Roethlisberger is asking for. They're asking for the contribution limits to be raised only for him. Okay. Kotz got you. Let's hear from Mr. Bellavante. Chief Judge Pryor, Judge Jordan, Judge Grant, may it please the court. Two years ago, this court wrote in the Honeyfunk case that speech doctrine is famously complicated. And that is particularly true in a case like this, as the court has found. There's nothing to enforce against the leadership committee statute. In fact, with the Purdue case, which the reason all the cases in the Northern District have said that it is likely unconstitutional is because they just look at Purdue. Let me ask you a tough question, Mr. Bellavante, okay? Yes, sir. Let's say that instead of suing your client, and you've got an argument, your client's not a state actor. Yes, sir. All but the office itself. Let's say we reject your argument that the operation of the general contribution limits in tandem with the leadership committee limits is a First Amendment, you say it's not a First Amendment violation. We say, yeah, that disparity, that's a lot like Scott v. Roberts, that's a lot like Davis. You're right about state action. The answer would have been right for your opponent to have sued the officials who enforced the contribution limits on the campaign committee, right? That's correct, and for that statute. What the district court found on page 8 and 9 is that the complaint did not seek it, just like coordination, and also that it was not raised until the reply brief and the preliminary injunction. There was an opportunity for the court to have that issue decided and discussed. It just didn't make it through this case. And I think on state actor, going straight to that, this is part of the remedy problem. They've told you, and the court below ruled, that it's the nexus joint action test, and that's the only thing before this court. And you just heard that the nexus joint action test is fact specific. There are literally no findings of fact in this preliminary injunction that support the state action nexus test, because all you have is that the state statute says the lieutenant governor can chair one, as can the governor, as can their opponents in the election, as can eight committees in the Georgia General Assembly. So this argument that only the lieutenant governor and governor get one, they're the only people named, but the legislative branch, each the House and Senate, have eight themselves, and opponents have it. But getting back, just tell me about the opponents again. The opponents once, and this is the one Georgia case that came out of the Northern District. Once someone is the nominee of the party opposite the governor, then that person is able to have a leadership committee. Right, but that's only after the primary. Correct. Correct. Yeah, so in the world that we're operating in now, no opponent can create a leadership committee. That may or may not matter, but that's the truth of the matter. Sure. I mean, what we're actually seeing in Georgia, and this was a footnote in our opening brief, is that one of the... Yes, that's right. No one else can do it, right? No, they can't. I mean, that's where I was going. Not right now. Not chair by matter of law, no, but receive the benefit of, yes. And we see that with a Democratic candidate for governor, Jason Estevez, who is receiving support from the Senate caucus, minority caucus, leadership committee. And the problem with their, and that brings up one of the problems with their as applied challenge. As applied is fact specific. There's no evidence, in fact, they've denied that they've ever sought and asked any other leadership committee if they could have their support. Why would they? Why would a leadership committee support a candidate who has not run for office in Georgia before? I mean, I don't think it's realistic to say, oh, it's equal because everyone can just ask another leadership committee. I think the difference is you can have one or you can't. And I think if we really try to cut it finer than that, you're going to run into problems. It's a fair question, but on this record where they had the burden, they should have answered that for you. But I would also say- But your point is, this is why you're the wrong defendant. It's one of the reasons, yes. And getting back, because I know there are just a bunch of questions on this, state action. The nexus joint action test really has four factors it looks at, all of which are fact specific. Interdependence, that's probably the best one they have in the sense that you have to be the lieutenant governor to automatically have one, but there's nothing that the state is getting from this. And that's the key. There's nothing in terms of joint participation- The state is getting incumbency protection. The state offers- Is it not? I don't- during the primary. I would say, your honor, that that is not the full gamut of the leadership committee statute because the legislative ones get one. So for example- Incumbency protection, it's the same thing. It's just more people are being protected. It could be, but if you had someone who is, you know, Mr. Jackson, but let's say on the Democratic side, they could begin funding through those legislative committees now that person's campaign. This is a race for governor, right? Yes. And the lieutenant governor is not the incumbent. No. No. But the governor is an incumbent in a race for governor that he's not termed limited. Correct. And the lieutenant governor, same thing. That's correct. But the governor, and we've seen this, in 2022 used his leadership committee to support the attorney general. In 2024, a candidate for the Supreme Court of Georgia. And just this year, the governor's is doing for the Supreme Court of Georgia as well. And in part to counter political parties. So if that is another reason why, if you have something like that, then it can work. But then maybe that would make sense if the governor and lieutenant governor could use this committee to support anyone but themselves. And perhaps that would have been some kind of relief they could have asked for in this, but they didn't. And remember, too, what they're saying their injury is, now what this has to do with the First Amendment- I mean, that's unrealistic relief. You say that, but that's just not possible. You can't, I can't imagine a district court trying to, assuming there's a constitutional problem with the LC statute, remedying it by telling the LC, now you have to support people that you disagree with. That seems nonsensical to me. I agree, Your Honor. But what we have here is something actually far worse. It is an absolute viewpoint discrimination. The leadership committee can support anybody it wants except Lieutenant Governor Jones. That is prima facie a viewpoint discrimination. It is presumed unconstitutional. It is, I believe, what Honey Factor called the worst sin of the First Amendment. That's not how it operates, though, because if that were true, then anyone could claim viewpoint discrimination for the ordinary contribution limits because that limits the amount of speech that someone can give in favor of a particular viewpoint. A donor could, but that's not even the viewpoint. The viewpoint discrimination here is that it is, the WBJ is hereby enjoined for soliciting contributions, speech, and making any expenditures in support. Your argument works. It's totally dependent on the idea, though, that you're a private actor. If you're a state actor, then it's not viewpoint discrimination because it's government speech. Yes, Your Honor. And I think this is so far from government. This is why I ask the questions about government versus private speech to begin with. It's hard for me to conceive of this as anything but private speech, and if it is, then it's hard for me to see how this is state action. I agree, and I think, for example, focus on the family where it says it's not enough that the state does something. The state has to do the thing that is causing the violation. In other words, the state would have to go out and raise money for Lieutenant Governor Jones in his capacity as Lieutenant Governor that he can then use for his campaign. Isn't that importing some sort of Monell requirement, though, where we haven't seen one? I mean, I haven't seen in any of these cases that you have to make an argument that the private entity is morally behind whatever the action is. It doesn't have to be morally behind. They can do coercive power or encouragement, but what focus on the family, part of the reason that it was not deemed state action is, quote, the state had nothing to do with the private entity's decision, and that's the case here. The state is doing nothing to direct the activities of the leadership committee, and they then rely on Burton, where the state of Vermont benefited from the discrimination because they were getting $25,000 a year. The state is not making money on the leadership committee, and there's no finding of fact on that regardless. What do you say about the hypo that I had about if the state legislature decided that the governor and lieutenant governor should be able to grab the house next door if they like it better? Sure. For their personal use? Yes. I think at that point, in state court, you would sue the governor under sovereign immunity. Here, I think you would sue either the governor or the lieutenant governor, probably the governor either way because the lieutenant governor's a legislative actor, and I think there's also an opportunity when the sheriff comes, if you wanted to resist, when the sheriff comes to take your house or the state patrol, you sue those individuals as well for violations of 1983. Wouldn't they say that's just state law and I'm a private actor? The state law says that I, in my personal capacity, while I'm also serving as lieutenant governor in my official capacity, but that I can take this house. At that point, there's nothing illegal under state law. There might not be, but then you, I mean, putting aside eminent domain and takings and all that stuff, but then you run into the- I don't think you can though because you only get to eminent domain and takings if it's the government taking it. Well, and I think there, though, you get into the cases on state action about deprivation where there is a procedure that the state sets up to allow it to happen because you would still, there would have to be a taking of possession, and it's in that process of the taking of possession that the state action would come to light. It's kind of the Kelo hypothetical, isn't it? In some ways. Where the government takes the property for the private developer and doesn't pay, you know- No, but in Kelo, it was the government though, conceitedly. I think right here, the argument is it's not the government. It's the person. Why this legislature would think that needed to happen, I can't say. I also can't necessarily say why the legislature thought the lieutenant governor and governor needed a special fundraising mechanism, but once it's there, if it's just the person, then why would the Fifth Amendment have anything to do with it? I think it would still be because they're taking it for public use, or I'm sorry, because of the office. But more importantly, I think that gets back into the state action cases where they set up the process. It's the cases about deprivation and wage takings and things of that nature that gets you there. But here, what you have, and they cited the Brentwood case, but Brentwood makes our point. In Brentwood, the state board reviewed, approved, or reaffirmed its approval of the challenged recruiting rule. That is far, far from what the office of lieutenant governor is doing. And they tell you that the court has a judicial obligation to make sure that state action doesn't get abused, as in your hypothetical, Judge Grant, but the Senate right before says there's also a judicial obligation not only to preserve an area of freedom by limiting the reach of federal law and avoid the imposition on a state for conduct it could not control. Imagine if campaign committees were all of a sudden deemed government actors. You then have campaigns subject to viewpoint discrimination arguments. You have campaigns subject to equal protection. Well, that First Amendment retaliation, they ran that negative ad against me because I exercised my free speech right in support of my candidacy. That's exactly, and that's why it's not workable. If there's going to be a workable resolution to this, and we submit that there is not a The first time you read it, you're kind of thinking there must be, but then you read it again and you read Davis. I had to read Davis about five times to figure out it was the trigger that was the punishment. Let's just say, for purposes of argument, that there is a First Amendment violation. I'm not going to ask you to concede that, but let's just say, I don't believe in your briefs that you endorsed the path that SAGA has taken, right here or at the district court. We said that that would be a better procedural path, for sure. That if Mr. Jackson and his campaign had sued the statute, 25-541A, that that would get them the relief because every case on this statute talks about it as a scheme. Which brief did you say that in? I believe it was both the opening and the other that, in terms of traceability, they had sued the wrong statute, under the wrong statute. But that was a standing argument, not a, this other way would be an appropriate way. And I mean, Chief Judge Pryor did have some, I think, fair questions about the fact that your friend on the other side doesn't really care if the opponent can raise as much money, but you also, your client, doesn't care if his opponent can raise as much money because he already has more money than anyone else. So, I don't know that either of you is really interested in the SAG approach for those reasons. I think the SAG approach is certainly a more intellectually honest and a cleaner way to do it than what is going on here. In a way, it's really the most analogous way of remedying the problem. You end up with an independent kind of committee, or committee separate from the campaign, the candidate's campaign. That's subject to the same rules as the leadership committee without in any way, you know, getting rid of the contribution and coordination limits that apply to the candidate themselves, right? That's right. And I want to make... If someone only wanted to challenge the LC statute because they thought the others were unconstitutional and didn't bother them in any way, could they get relief suing government officials under Ex parte Young? Conceivably, if a donor were to sue and attack the leadership committee statute and say, I want to give over $8,400, I want to be able, and I can't do it because I don't have somebody a leadership committee is supporting. That's not this case because Mr. Jackson, just like Mr. Jones, can give... What would be the remedy? So the remedy would be that they could go ahead and give that, though. I think that's right. It wouldn't be... But they wouldn't have a committee. It wouldn't be anything, any kind of injunction against state officials and how leadership committees operate with it. I think that's right. I mean, that's what the Carr case came close to below, but, you know, I think it's fair to say that there was not a situation where the Attorney General wanted to sue his own client to ask for that relief, but had there been a donor who had made the argument, I think it would be in a better position just in order to do that. And let me, too, on that point, because there's been this discussion about what does the Ethics Commission do and what did it do here? The reason the Ethics Commission dismissed the complaint against WBJ leadership committee is not timing. That was the one they filed against the campaign committee, but it was in part because the argument was being advanced by Mr. Jackson that the leadership committee statute is unconstitutional. That has never been declared outside of a preliminary injunction orders, and the state agency does not have the authority in its own right. I think Mr. Tarnas has admitted it's the interaction of the contribution limits with it. He just admitted that a moment ago. And if that is the case, that's what creates the First Amendment problem. Although those contribution limits are specifically referenced in the same statute, so I don't know that it's fair to say that that takes it out of challenging that one statute. And perhaps, and look, this gets to that kind of point of like the traceability issue here and the redressability is difficult. I will grant that. But what we know at least is based on these findings of fact, where the only findings of fact went in favor of Mr. Jones, there is no basis to engage in a viewpoint discrimination injunction as we have here. There is no basis to decide that the balance of the equities favors Mr. Jackson, particularly when there's no evidence and no argument on chilling or restraint. Once your client's LCE was established, does that continue in perpetuity as long as he refiles until he's no longer either lieutenant governor or governor? Or if he were elected governor, does he start a new one? When he is elected governor, he will start a new one as governor. And there's provisions in the statute. When he becomes the nominee, does he get a new one or does he just continue to operate under the lieutenant governor one? You know, I don't think we've faced that. Theoretically, I think you could have two. I'm not sure that, you know, we know it can't be his campaign committee. But at that point, the statute talks about what you do with the resources. You either hand them off to someone else or you transfer it to another committee as we have in other provisions. Can his current committee keep its assets and then spend them going forward if he were to make it to the general? Or would those assets need to be transferred to a different LCE at that point? No. If when we make it to the general, then the current leadership committee will continue to operate up until the, as it is, up until the inauguration in January. Okay, until he's either governor or not LG. Correct. Once he ceases being lieutenant governor, though, it ceases to exist? It does not. This one could cease to exist. Could or would? It would cease to exist with him as the chair. And so he would then dispose of the assets by giving them to another person. So yes, this entity, WBJ, would cease to exist. I was thinking if that would transfer to the, I'm sorry. Does WBJ have continual filing requirements? It does. In fact, that's one of the things, one of the reasons the state had advanced for it. Unlike independent committees, it files on a much more regular and frequent schedule. I noticed my, I'm sorry, you were at a question. What does it, does it ask anything in the, of the government or of the Ethics Commission in those filings? Does it seek approval of some sort? What does that look like functionally? It's a registration, like registering a company or registering a campaign. It's just information that's provided to the Ethics Commission, and then obligations to report come on top of that. And then outside of the 60-day exclusion before any of the elections, right, any of the election or a variety of other entities? The Leadership Committee is not a campaign committee or a candidate. And so that was the problem with the first Ethics Commission complaint they filed against Mr. Jones, is that they went against the candidate and the committee. The problem with the Leadership Committee was not that it was untimely. It was that it was based on a presumption that the law is unconstitutional, which the Ethics Commission cannot make in the first instance on its own and say that a state law is unconstitutional. So when your client formed a Leadership Committee, he filed the paperwork with the Ethics Commission, right? Yes, sir. Did he have to wait for the Ethics Commission to approve it, to then operate it? It's pre, it's pro forma, it's done in like a day or so. I mean, it's, it's... But, but does he have to wait for them to say approved and signed it, or, or does, or can he just begin operating it? I think the operative word in the statute is to file. And so the act of filing... So the act of filing forms it. Correct. Now, there could be a risk... Does it have to wait for the official then to sign off on it? I don't believe so. Now, there could be a risk that they did it wrong, but that's a different... But then the official, we don't, we saw this in the Stacey Abrams case, right? Because she tried to file, she tried to file for one, and the Ethics Commission rejected that request, right? Because she was not the party nominee at that time. Right. She didn't qualify. I was, I was... But, but, but in your case, you didn't, your client, because he was specifically named in the law, he didn't have to wait for someone to sign off on it. Is that what you're telling me? That's correct. He was the official Republican nominee. Okay. All right. Well, I noticed the, the red light is not aspirational, so unless there's any other questions, I'll be happy to... It has been today. Thank you. But we've had lots of questions. He won't sleep at night because of it. No, I've just as much been an offender as anybody today. Mr. Toronis, we're going to try to hold you to your eight minutes, though. I'm not sure whether this, my reading of the statute is different than my friend's. If you look at 21-5-34.2c, it says, if a person chairing a leadership committee ceases to hold the office or the status as a nominee of a political party as described in A, then the leadership committee must disband. So, as I, unless, candidly, I don't know if there are regulations at the Ethics Committee that might change this, but as I read the statute, at least... Ceases to operate when they no longer hold the office. Hold either of the offices. So, I think my reading of the statute is WBJ seamlessly stays in existence if Burt Jones is elected as governor and takes the oath of office. There's not a shift there. Okay. So, oh, it's the same committee that would... That's my reading. I'm not sure that matters one way or the other here, but I just want to know.   Okay. With, you know, state action. I think the key point on state action is that there's not, as I conceive it, and this may be wrong, not everything an entity does is necessarily state action. Some of the things it can do can be state action, other things it could not be. The establishment... When it speaks in support of someone's election campaign, it's state action? No. I think our position is that the establishment of the Leadership Committee is state action because the statute requires that either the governor or lieutenant governor... Establishment doesn't hurt you. Well, it enables... The only thing, if he says, I won't spend a penny of this for anything other than the lieutenant governor's office, then you wouldn't have any injury, would you? Well, that's true, but I'm not... It only happens when they spend in support of his campaign. Well... And the disparity that that creates for your client in operation with the contribution limits that we have a problem. Well, that's true, but that's, of course, all WBJ does is spend in support of Mr. Jones's election campaign. Yeah. We're not taking the position that the ads that WBJ puts on television are government speech that are subject to retaliation protections and things like that. I think it's the establishment of the committee that enables Mr. Jones to then use this Leadership Committee to injure... If he had no money in it, it wouldn't be a problem if he established it. No, and if he used it to support other... If it was a zero bank account and he established a committee, it's the fact that he's raising money and spending it against you that's the problem. That's right. If he used the committee to support other candidates or to issue ads, none of that would injure us and would create this sort of First Amendment problem. Wouldn't that imperil the proposed remedy in the Saga case too? Because let's say that Burt Jones sees the light and decides that it's really unfair for him to have an advantage, so he is going to only spend what remains of his LC money on other candidates. And at that point, then it wouldn't be proper for Secretary Raffensperger's committee to have carte blanche apart from the limits, right? If what we're worried about is matching, then in either case, the kind of choices of the particular committee would matter, right? Well, I think that's right. I mean, I don't understand the remedy they're seeking in the first case because it's a ticket for one candidate. It doesn't... I agree with Judge... It's a ticket for one plaintiff, which is what they always are. Well, that's true, but when you're talking about a constitutional remedy, you've got a constitutional... Right. It's the person whose rights are being violated. No, that's absolutely right, but the key point is that when you've got a general rule and you've got narrow exceptions, what courts generally do is they strike the exception. You call it. That's a nice way of framing it. I'm not sure that's exactly what it is, but... Well, the general rule is $8,400 per donor for the primary election. I mean, you could say there's a general rule for legislative leadership committees, and then there's a different... You could say there's a general rule for candidate committees, or you could say it's the exception. I mean, nice framing, but it's the interrelationship of the two that creates the injury. Well, we completely agree with that. It is the interrelationship, but the question is, assuming there's state action, and assuming you get to the merits, the question is, what is the proper remedy? Yeah, I agree with you. If there is state action, I think there's a First Amendment problem. In the words of the late, great Chief Justice Harris-Hines, what would you say is your best case in support of the argument that courts will usually deal with the specific rather than the general? Oh, the Barr case that I mentioned. It's not cited in our briefs here, but Barr versus American Association of Political Consultants. I can briefly quote it. The court goes through exactly what you do, and this is what you do when it says, if a statute contains a severability clause, which this doesn't, but the court deals with that in the next sentence. If a statute contains a severability clause, the court typically severs the discriminatory exception or classification, and thereby extends the relevant statutory benefits or burdens to those previously exempted, rather than nullifying the benefits or burdens for all. In light of the presumption of severability, the court generally does the same thing in the absence of a severability clause. Now, there are exceptions and unique circumstances as the court's opinion goes up, but generally speaking— If we're remedying, though, a free speech violation, aren't we going to do it in a way that promotes speech? Well, that was a First Amendment case, and in fact, the results in Barr was less speech. The result in Davis was less speech, given the government had less, allowed fewer, lower— No? You look dubious. I don't know about that. It's really sort of— The remedy in Davis is you can't punish somebody for speaking. Well, the remedy was at the higher— I mean, insofar as it punishes, it's actually deterring, and we would think it chills speech. Right, but it meant that the other candidate couldn't raise as much money. Exactly. So, that diminished that person's speech. It reduced the donor contribution limit for the other candidate.          Correct. Which, by definition, reduced the amount that he could spend on speech. Yeah. You reduced that limit for one candidate, right? Yeah. Correct. Because it effectively is punishing the other candidate for speaking. I think it raised it—in that case, I think there were two candidates. It raised it for—the millionaire had to—his limit was the same. Everybody else was raised. In that case, there was one candidate. Yeah, you're punishing him for speaking in support of his own campaign. Right. But my point is the remedy was lowering the contribution— So, you're punishing speech, and they said that's not—the First Amendment doesn't allow that, right, Mr. Tarnas? No, no. I agree with that, but my—I think I would echo what Judge Grant said, which is the result was lowering—and that same thing is true in the Bar— I mean, you're disabling a punishment of speech. I think the point is you can't make a— That's promoting speech. You can't make a simplistic argument that that decision caused more speech rather than less. Well, Your Honor, look at the Bar case, which had the exact same—it was an—it was one of these automatic dialing cases. It was an exception for government speech. Supreme Court struck down the exception for government speech, and so they were subjected to the same limitations under the Telephone Act, and that reduced the speech of government actors. I have nine seconds left, and you warned me not to go over, so I'm happy to answer any other questions. I don't hear any other questions, so thank you very much, Mr. Tarnas. All the cases were well-argued today, and we'll be adjourned.